SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MARTIN R. BADER, Cal Bar No. 222865
XIMENA SOLANO SUAREZ, Cal Bar No. 263574
TERESA R. MORIN, Cal Bar No. 351874
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691
Email: mbader@sheppard.com
xsolanosuarez@sheppard.com
tmorin@sheppard.com

Attorneys for Plaintiff Spanish Village Art Center, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPANISH VILLAGE ART CENTER, INC., a California Nonprofit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE ARTS AND EDUCATION FOUNDATION, INC., a California Nonprofit Corporation; NANCY SCHEUERMANN, an individual; FRANK CASCIANI, an individual; SUSAN BINFORD, an individual; MAUREEN KING, an individual; and NATASHA PAPOUSEK, an individual,<br><br>Defendants. | Case No. '26CV4528 WQHJAC<br><br>**COMPLAINT FOR: (1) VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)); (2) VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 ET SEQ.); (3) CONVERSION; (4) UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE § 17200 ET SEQ.); (5) FRAUD; (6) BREACH OF FIDUCIARY DUTY; (7) MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE §§ 3426–3426.11); (8) UNJUST ENRICHMENT; (9) TRESPASS TO CHATTELS**<br><br>**DEMAND FOR JURY TRIAL** |

Spanish Village Art Center, Inc. ("SVAC" or "Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Defendants Village Arts and Education Foundation, Inc. ("VAEF"), Nancy Scheuermann ("Scheuermann"), Frank Casciani ("Casciani"), Susan Binford ("Binford"), Maureen King ("King"), and Natasha Papousek ("Papousek") (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. Spanish Village Art Center, Inc. ("SVAC") is a California nonprofit, public benefit corporation that has served as the organizational backbone of the artist community at Spanish Village in Balboa Park, San Diego, since its designation in 1936 and official incorporation in 1981. For almost 90 years, SVAC has provided cultural, educational, and artistic enrichment to its members and the public, and has built and maintained substantial intellectual property assets—including its domain names, website, email infrastructure, marketing databases, and corporate records—using its own funds and resources.

2. Village Arts and Education Foundation, Inc. ("VAEF") is a California nonprofit, 501(c)(3) corporation that was created by SVAC in 2013 and was originally intended to serve as SVAC's sister institution for outreach, grant writing, permit holding, and education programs. Beginning in 2024, after VAEF obtained a Special Use & Occupancy Permit ("SUP") from the City of San Diego for the Spanish Village Art Center premises, VAEF's officers—who were former officers of SVAC—exploited their prior administrative access to SVAC's systems and assets to systematically seize control of SVAC's intellectual property, digital infrastructure, financial accounts, and operations.

3. Specifically, VAEF and its agents Scheuermann, Casciani, Binford, King, and Papousek: (a) seized and continue to retain SVAC's domain names SpanishVillageArtCenter.com, SpanishVillageArt.com, and VillageArtsandEducation.org (the "Websites"), together with all associated website

content and email accounts; (b) redirected all web traffic from SVAC's primary domain to VAEF's own website; (c) converted SVAC's corporate records and documents stored on SVAC's website; (d) misappropriated approximately 700 contacts from SVAC's Constant Contact marketing database; and (e) orchestrated the unauthorized takeover of Gallery 21's income producing operations and the withdrawal of more than $3,000 from SVAC's Gallery 21 bank account without notice, authorization, or compliance with SVAC's internal financial controls.

4. These actions have deprived SVAC of its ability to communicate with the public, market its programs and events, access its own corporate records, and generate revenue. SVAC's members, many of whom are seniors who depend on the artist community for their livelihood and social engagement, have been directly and irreparably harmed.

5. SVAC brings this action to recover its stolen property, obtain compensation for the damages it has suffered, and enjoin VAEF from continuing its unlawful conduct.

## THE PARTIES

6. On information and belief, Plaintiff SVAC is a California nonprofit public benefit corporation, incorporated in 1981, with its corporate address at 415 Laurel Street #117, SD 92101. SVAC serves as the membership organization for the artist community at Spanish Village in Balboa Park.

7. On information and belief, Defendant VAEF is a California nonprofit, public benefit corporation with 501(c)(3) tax-exempt status, with its principal place of business at 1770 Village Place, Studio 18, San Diego, California 92101. VAEF was created by SVAC in 2013 and holds the SUP issued by the City of San Diego for the Spanish Village premises, effective January 1, 2024.

8. On information and belief, Defendant Scheuermann is an individual residing in Montgomery County, Maryland. Scheuermann served as SVAC's Vice President from 2019 to 2023 and simultaneously served as Director of VAEF from

2019 to present. By virtue of her positions, Scheuermann had privileged administrative access to SVAC's corporate assets, including its domain names, website, email accounts, and membership databases. Scheuermann has acted as an agent and continues to be an agent of VAEF.

9. On information and belief, Defendant Casciani is an individual residing in San Diego County, California. Casciani served as SVAC's President from 2017 to 2022, a director on SVAC's Board through 2023, and became Deputy Director of VAEF prior to November 2023, a position he continues to hold. By virtue of his positions, Casciani had privileged administrative access to SVAC's corporate assets, including its domain names, website, email accounts, and vendor contracts. Casciani has acted as an agent and continues to be an agent of VAEF.

10. On information and belief, Defendant Binford is an individual residing in San Diego County, California. Binford served as Treasurer of SVAC from 2021 to 2024 and as a Director on SVAC's Board until July 2025. Binford has served as Treasurer of VAEF since 2021. By virtue of her positions, Binford had privileged administrative access to SVAC's corporate assets, including its financial accounts and corporate records. Binford has acted as an agent and continues to be an agent of VAEF.

11. On information and belief, Defendant King is an individual residing in San Diego County, California. King served as SVAC's Recording Secretary and as VAEF's Secretary and representative to the SVAC Board. By virtue of her positions, King had privileged administrative access to SVAC's corporate assets, including its corporate records and membership databases. King has acted as an agent and continues to be an agent of VAEF.

12. On information and belief, Defendant Papousek is an individual residing in San Diego County, California. Papousek served as SVAC's Corresponding Secretary and also worked in the VAEF office. Papousek was elected President of SVAC in March 2025, but resigned in July 2025. By virtue of her

positions, Papousek had access to SVAC's Constant Contact marketing database and related confidential information. Papousek has acted as an agent and continues to be an agent of VAEF.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., both federal statutes.

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same case or controversy as Plaintiff's federal claims and are so related that they form part of the same nucleus of operative facts.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Each Defendant except Scheuermann resides or is domiciled in this District.

16. This Court has personal jurisdiction over each Defendant. VAEF is domiciled in this District, maintains its principal place of business in this District, and committed the acts giving rise to this action in this District. Defendants Casciani, Binford, King, and Papousek are individuals who reside in this District and committed the acts giving rise to this action in this District. Defendant Scheuermann resided in this District until October 2023, then conducted business activities in this District by virtue of her position with VAEF. Defendant Scheuermann also purposefully conducted activities in the District and took advantage of the benefits and protections of the District's laws by virtue of her position with VAEF. Defendant Scheuermann's activity in this District is directly related to the underlying controversy.

## FACTUAL ALLEGATIONS

### A. Background

17. Spanish Village has served as an art-craft center in Balboa Park, San Diego, since the 1930s. In 1981, the artist community incorporated itself as Spanish Village Art Center, Inc., a nonprofit, public benefit corporation. SVAC operates as a membership-based nonprofit organization that serves as the organizational and governance backbone of the artist community at Spanish Village, managing membership, member activities, member governance, annual events, and committee functions.

18. In 2000, with the City's approval, SVAC placed the corporation's name on signs on the buildings. The property's name remained Spanish Village.

19. At first, SVAC did not hold 501(c)(3) tax-exempt status, which the City of San Diego came to require of all SUP holders in Balboa Park in or around 2010. Accordingly, in 2013, SVAC created and paid for the incorporation of VAEF, a 501(c)(3) corporation, in order to meet the requirement of Parks & Recreation for a Special Use Permit.

20. VAEF was intended solely to serve as SVAC's sister institution for outreach, grant writing, and education programs, and to hold the SUP on SVAC's behalf, while SVAC continued to govern its membership and manage its day-to-day operations. The two entities were expected to remain legally and administratively separate while jointly contributing to the same overall mission to support the San Diego Arts community.

21. Since at least the 1990s, SVAC has owned and operated the Domain Names. SVAC also maintained domain-based email accounts for its officers and operations.

22. In 2018, the SVAC Board approved funds to build a new website, and in June 2019 a rebuilt website went live. In June 2022, SVAC entered into a three-year website maintenance agreement for the Websites with webmaster Michael

Calas of Desynable ("Calas"), running through November 2025, for maintenance of SpanishVillageArtCenter.com and associated sub-domains (the "Maintenance Agreement"). SVAC was introduced to Calas, because he is a friend of both Scheuermann and Casciani.

23. SVAC also maintained a Constant Contact marketing database. This marketing database contained over 2,000 contacts, including SVAC members, art class participants, gallery renters, and other individuals who had engaged with SVAC's programs and events over the years. This database was SVAC's primary tool for communicating with its community. The websites and database are the intellectual property of SVAC.

24. Between 2019 and 2023, key leadership positions at SVAC were held by the following individuals who simultaneously served as, or later became, officers of VAEF:

- Scheuermann served as SVAC's Vice President (2019–2023). By virtue of that role, she held administrative access to SVAC's digital systems, including the officer email address vicepresident@spanishvillageartcenter.com. She became Director of VAEF in 2019, a position she held simultaneously with her role as Vice President of SVAC;
- Casciani served as SVAC's President (2017–2022). In that capacity, he contracted with and managed the SVAC webmaster, and held administrative access to SVAC's website, domain names, and vendor contracts. He later became Deputy Director of VAEF. In 2023, Casciani served on the SVAC Board as Past President;
- Binford served as Treasurer of both SVAC and VAEF simultaneously (2021-2022; 2023-2024), with privileged access to SVAC's financial accounts and records. In 2023, she served on the SVAC Board; and

- King served as SVAC's Recording Secretary (2020-2021) and as VAEF's Secretary (2023).

25. These individuals' dual roles provided them with privileged administrative access to SVAC's corporate assets, including its domain names, website, email accounts, bank accounts, and membership databases.

**B. The Special Use Permit**

26. SVAC holds regular elections pursuant to its bylaws. The 2023 and 2024 elections brought in a new slate of officers who had no prior relationship with VAEF. In 2023, these officers included Jon Evans ("Evans"), President; and Natasha Papousek ("Papousek"), Corresponding Secretary. In 2024, these officers included Linda Lepeirs ("Lepeirs"), Vice President; Sheryl Sabin ("Sabin"), Treasurer; and Stephanie Henry ("Henry"), Recording Secretary (who also served as Website Chair).

27. In 2022 and 2023, the City of San Diego negotiated a Special Use & Occupancy Permit ("SUP") with VAEF for the premises at Spanish Village. The SUP granted VAEF the non-exclusive right to use the City-owned premises and made VAEF responsible for programming, grant writing, outreach, studio sublicensing, and gallery operations. The City required VAEF to be a nonprofit organization to obtain the SUP, which meant as a 501(c)(3) VAEF could not manage for-profit SVAC artists. So, VAEF and SVAC had to collaborate.

28. Because Scheuermann, Casciani, and Binford simultaneously held positions at both SVAC and VAEF, they represented both entities in the negotiations. After Evans became president and sought to participate in the negotiations, he attended the next negotiation meeting with the City, at which he raised concerns that Scheuermann had a conflict of interest in the negotiations. Thereafter, Evans was excluded from further negotiations and assured by Scheuermann, Casciani, and Binford that VAEF was negotiating on behalf of SVAC.

29. Scheuermann, Casciani, Binford, and King also assured SVAC's Board that the SUP would be presented to SVAC's Board before execution. On November 1, 2023, Casciani signed the SUP on behalf of VAEF, effective January 1, 2024, without presenting it to the SVAC Board as they promised given the organizations' joint mission.

30. Prior to and following the execution of the SUP, both VAEF and the City of San Diego assured SVAC's members and Board that nothing would change about SVAC's status, governance, or operations, despite VAEF holding the SUP instead of SVAC. VAEF would function as the property manager without any governance over the artists. In January 2024, Scheuermann published this assurance on the agenda for an SVAC meeting, stating that SVAC would continue to be in charge of members and member activities. The City's Parks and Recreation Department similarly assured SVAC members that their operations would continue uninterrupted.

31. In late January 2024, following the effective date of the SUP, VAEF began administering sublicenses to individual artists operating on Spanish Village premises. At that time, Casciani presented Evans with a sublicense for SVAC, which Evans executed on SVAC's behalf. However, Casciani subsequently withdrew the sublicense on the grounds that SVAC did not possess a Business Tax Certificate issued in its own name.

32. The absence of a Business Tax Certificate in SVAC's name was itself a consequence of the conduct of Scheuermann and Casciani, who, while serving as SVAC's Vice President and President, respectively, had caused SVAC's Business Tax License to be issued under the name "Gallery 21 at Spanish Village" rather than in SVAC's corporate name, purportedly to avoid tax penalties—an arrangement that was itself improper and unauthorized. Evans was not aware of this irregularity at the time Casciani withdrew the sublicense. Upon learning of the deficiency, Evans promptly undertook efforts to obtain a Business Tax Certificate in SVAC's proper

corporate name. The City issued SVAC a new Business Tax Certificate, but Casciani still refused a sublicense.

**C. Seizure of SVAC's Domain Names, Website, and Email Accounts**

33. After the newly elected SVAC officers were seated in February 2024, the outgoing officers (Scheuermann, Casciani, and Binford) transitioned from SVAC leadership into their VAEF roles but retained administrative access to SVAC's digital assets. King, although not an SVAC officer, became the VAEF representative to SVAC's board.

34. To ensure administrative continuity across successive administrations, SVAC maintained role-based email addresses tied to board positions rather than individual names. For example, Scheuermann utilized the email address vicepresident@spanishvillageartcenter.com rather than an individually named address. Thus, when a new Vice President assumed the position, that officer would have access to prior correspondence and ensure continuity of organizational communications.

35. Nonetheless, despite no longer holding any office in SVAC, Casciani retained de facto control over the SVAC website by virtue of his personal relationship with Calas, who continued to serve as webmaster and maintained exclusive possession of the site's administrative credentials.

36. Further, upon leaving office, Scheuermann retained the SVAC officer email address vicepresident@spanishvillageartcenter.com. Instead of transitioning that account to the incoming Vice President, Lepeirs, Casciani instructed the webmaster to assign Lepeirs a different address—vp@spanishvillageartcenter.com—without disclosing that Scheuermann continued to receive communications directed to the original vice president account. Lepeirs was never informed of this arrangement. When SVAC's Board discovered this, it directed Scheuermann to relinquish the email address and ordered the webmaster to transfer control of the account to Lepeirs. Scheuermann, Casciani, and the

webmaster Calas each refused to comply.

37. On May 2, 2024, the webmaster Calas emailed SVAC's recording secretary, Henry, informing her that VAEF claimed ownership of the SVAC website and domain names. Henry asserted that Scheuermann had paid for the domain renewal with her personal credit card and therefore she claimed that she personally owned the domain. However, at the time, Scheuermann was serving as SVAC's Vice President and she was reimbursed for the payment.

38. Further, Henry, acting as chair of the SVAC Website Committee, requested and obtained administrative access to the Website from Calas. Given the ongoing tension between the two corporations and Casciani's retention of administrative access to SVAC's Website despite no longer serving as an officer or director of SVAC, Henry removed Casciani's administrative access on the grounds that he held no position with SVAC and served only as Deputy Director of VAEF. In response, Casciani directed Calas to restore his own administrative access and then to revoke all administrative access from both Henry and Evans. When Henry, acting as website chair during the transition, contacted the web hosting provider, SiteGround, to restore access, the provider locked both parties out pending resolution of the ownership dispute.

39. At the time of these actions, the webmaster was still operating under the Maintenance Agreement, which (1) identified SVAC as the 'Client,' (2) defined the website as content stored by SVAC at the host servers, and (3) required Calas to provide maintenance services to SVAC for a monthly fee. The Maintenance Agreement did not authorize Calas to take directions from any third party, including VAEF, or to restrict SVAC's access to its own website. Calas remained in contract with SVAC through October 31, 2024, when he revoked his contract.

40. SVAC's website platform hosted not only SVAC's own website, but also the websites of VAEF and Gallery 21, the domains of which SVAC also owned. Unbeknownst to SVAC, the platform also hosted Casciani's personal

business website and potentially those of other VAEF-aligned individuals. Following SiteGround's lockout, VAEF complained to SVAC that without access to the website platform, it could not fulfill its obligations to the City under the SUP. As a gesture of goodwill and with the mistaken expectation that VAEF would reciprocate by restoring SVAC's access, Evans directed SiteGround to restore VAEF's access to its website. SiteGround restored access to the webmaster Calas, who reinstated access only to VAEF, in breach of the Maintenance Agreement, and never restored SVAC's access.

41. In or about September 2024, without authorization or notice to SVAC, VAEF caused all web traffic directed to SpanishVillageArtCenter.com, SpanishVillageArt.com, and VillageArtsandEducation.org to be redirected to VAEF's own website at villageartscenter.org. This unauthorized redirection diverted SVAC's web visitors, members, and prospective members to VAEF's site, creating a false impression that VAEF and SVAC were the same entity, that VAEF was affiliated with, associated with, or sponsored by SVAC, or that SVAC no longer existed.

42. Thereafter, VAEF caused the WHOIS registration for SpanishVillageArtCenter.com to be updated and the registrant information to be concealed behind a third-party privacy service. By privatizing the registration after seizing control of the domain, VAEF deliberately obscured the chain of ownership and concealed the fact that it had appropriated a domain to which it never held any right, title, or interest. VAEF continues to maintain both the unauthorized redirection and the privatized registration to the present day. As a result, since May 2024, SVAC has been unable to access its own website, retrieve corporate documents and records housed thereon, communicate with the public through its established online presence, or maintain the digital identity it has built for over more than two decades. Additionally, SVAC's artists have lost their publicity and

marketing capabilities, and SVAC has been unable to fulfill basic organizational functions, resulting in the loss of approximately two-thirds of its income.

43. VAEF has claimed that Article 46 of the SUP, which requires the "PERMITTEE" to maintain an official website for the premises, grants VAEF the right to own and control SVAC's website and domain names. This claim is without merit. SVAC is not a party to the SUP, which is a contract between the City and VAEF. As such, the SUP cannot convey to VAEF ownership or control of property belonging to a third party, SVAC. Further, Article 46 requires only that the 'PERMITTEE' (i.e., VAEF) maintain an official website for the premises and post certain public-facing information thereon; it says nothing about ownership of any particular domain name, website, or digital infrastructure, and cannot be read to grant VAEF title to property belonging to a third party.

44. The domain names, website content, and email infrastructure were purchased, built, and maintained by SVAC with SVAC funds, and they are SVAC's intellectual property. In fact, at the time the domain was originally registered in 1999, Casciani was serving as SVAC's President and neither he nor Scheuermann held any position with VAEF, confirming that the domain was acquired and held as SVAC's corporate property. It was even announced to the board in January 2020 that SVAC had secured ownership of the domains SpanishVillageArtCenter.com and SpanishVillageArt.com.

**<u>D. Misappropriation of SVAC's Constant Contact Marketing List</u>**

45. In November 2024, Papousek, who served as SVAC's Corresponding Secretary and also worked in the VAEF office, extracted approximately 700 names and contact information from SVAC's Constant Contact marketing database without authorization and provided them to VAEF. On October 31, 2024, Papousek resigned as SVAC's Corresponding Secretary while withholding the Constant Contact password from SVAC's President. Papousek then extracted and completely deleted the names and contact information from SVAC's Constant Contact. On November

19, 2024, Papousek returned the password and SVAC's president requested the stolen contacts back, but Papousek refused. VAEF has continued to use SVAC's marketing contacts for its own purposes.

**E. Takeover of Gallery 21 and Conversion of Funds**

46. Gallery 21 was established by SVAC in 1981 as a venue for art exhibitions and a source of revenue for SVAC, and has been continuously operated under SVAC's control since that time, with the assistance of a paid director, Vicky DeLong ("DeLong"), who was compensated monthly by SVAC.

47. On October 21, 2024, VAEF held a board meeting at which Scheuermann announced that VAEF would be taking over Gallery 21 and that its director would henceforth work for VAEF. Scheuermann claimed that Gallery 21 was not allowed to operate under its current sublicense with SVAC as the business owner, despite SVAC having paid $500 to maintain the Gallery's sublicense for the next six months.

48. Between approximately October and November 2024, acting on instructions of the VAEF Board, DeLong made a series of unauthorized withdrawals and disbursements from SVAC's Gallery 21 bank account, including, e.g., refunds to previously booked art society rentals, maintenance expenses, the director's own compensation, supply purchases, and a credit card payment made directly to VAEF. These withdrawals totaled more than $3,000 and were made without SVAC's knowledge or authorization, or compliance with SVAC's requirement of dual signatures on checks. All checks written by the director prior to the VAEF Board's October 21, 2024 meeting bore two authorized signatures, consistent with SVAC's financial controls. The checks written after that date bore only DeLong's signature.

49. SVAC was not notified of the Gallery 21 takeover until nearly a month later, on November 18, 2024, when DeLong sent SVAC a letter of resignation and VAEF formally notified SVAC that it was taking over Gallery 21. Upon learning of the takeover, Evans—SVAC's President—removed DeLong's access to the Gallery

21 bank account, causing DeLong to subsequently accuse SVAC of misappropriating its own funds. SVAC did not learn about the unauthorized withdrawals until several months later.

**F. Refusal to Issue Sublicense and Unreturned Payment**

50. On September 16, 2024, officers of SVAC met with officers of VAEF and representatives of the City's Parks and Recreation Department regarding the issuance of a sublicense to SVAC. The City's Parks and Recreation Department had fully anticipated that a sublicense would be forthcoming, so it sent SVAC an invoice for $500 for a sublicense covering the period October 1, 2024 through March 31, 2025.

51. On September 27, 2024, SVAC paid the invoice, and the City Treasurer accepted payment and issued a receipt. Evans then submitted to the City's Director of Parks and Recreation a copy of the sublicense signed by representatives of both SVAC and VAEF, a copy of SVAC's Business Tax Certificate, and the receipt for the $500 payment, and requested that the City honor the contract. The City did not respond.

52. SVAC holds a sublicense signed by both parties and has tendered payment that was accepted and retained by the City. Yet, despite assurances by VAEF that SVAC would continue to operate on the premises, VAEF refused to issue a sublicense to SVAC. As under the terms of the SUP, VAEF, as the Permittee, holds the exclusive right to sublicense the Premises to third parties, subject to City approval, SVAC's ability to operate on the premises legally requires a sublicense from VAEF, making VAEF's refusal dispositive.

53. Eventually, a representative of the Parks and Recreation Department confirmed to Lepeirs that the $500 would be refunded. To date, SVAC has not received a refund.

## G. SVAC's Efforts to Resolve the Dispute

54. In June 2024, at the suggestion of the City's Parks and Recreation Department, Lepeirs contacted the National Conflict Resolution Center ("NCRC") and devoted substantial time and effort to arranging mediation between SVAC and VAEF in the hope that the two organizations could reach a mutually beneficial resolution. VAEF refused to participate in mediation.

55. On September 16, 2024, during the sublicense meeting with the City's Parks and Recreation Department, Casciani assured SVAC representatives that SVAC could have the website back. In October 2024, a representative of the City's Parks and Recreation Department met with Lepeirs and stated that Scheuermann had promised that SVAC's websites and domain names would be returned to SVAC by Christmas 2024.

56. In September 2024, SVAC members personally retained and paid for an attorney to attempt to recover the Website through the web hosting provider. The hosting provider's counsel confirmed that the account containing SpanishVillageArtCenter.com was locked and would remain so pending resolution of the dispute but stated that the hosting provider could not reverse the redirection that VAEF had created. This effort was unsuccessful in restoring SVAC's access to its domain names or website.

57. In October 2024, SVAC also retained a web development company to find a compromise that allowed VAEF to return the Website after extracting what they needed to fulfill their SUP needs. This effort was unsuccessful in restoring SVAC's access to its domain names or website.

58. To date, VAEF has not returned the domain names or websites to SVAC and continues to redirect all traffic to its website.

## H. Pattern of Intimidation and Retaliation

59. Following its acquisition of the SUP, VAEF engaged in a pattern of discriminatory treatment, speech restrictions, and intimidation directed at artists

affiliated with SVAC. For example, VAEF informed SVAC artists that they could not discuss SVAC on the premises, and studio managers received warnings for doing so. No comparable restrictions were imposed on other organizations or VAEF-affiliated individuals.

60. VAEF also issued written notices to SVAC-affiliated studios alleging improper conduct, such as improper studio closure, while similarly situated VAEF-aligned studios engaged in the same conduct without repercussion.

61. VAEF also imposed additional financial burdens on SVAC members by requiring a $300 fee for artists to retain their sublicenses. Because SVAC membership already carried its own $300 annual fee, SVAC had no choice but to reduce its membership fee to $75 in order to alleviate the financial burden that VAEF's fee imposed on the artists. As a result, SVAC suffered a substantial loss of membership revenue.

62. Casciani verbally warned and threatened SVAC-affiliated artists, including elderly and disabled artists, with the loss of their studio spaces, because the artists were discussing SVAC which in turn caused the artists significant distress.

63. VAEF asserted that it had the right to take any studio for use as a classroom, and threatened to deny permits for guild events unless a guild took punitive action against a SVAC-affiliated member. VAEF made these assertions and threats without holding any such public meeting or providing any such notice. These actions created a climate of fear and intimidation among the artist community, with multiple artists expressing fear of retaliation if they raised concerns with the City.

**I. SVAC's Creation of the Spanish Village Art Center Foundation**

64. As a direct consequence of VAEF's systematic seizure of SVAC's assets and its refusal to issue SVAC a sublicense, SVAC was left without formal authorization to conduct organizational activities on the Premises. Therefore, as a contingency to preserve the artist community's ability to operate in the event that

VAEF's SUP is suspended or not renewed, SVAC was compelled to incorporate the Spanish Village Art Center Foundation (the "Foundation") as a California public benefit nonprofit corporation on January 1, 2025. On January 23, 2025, the IRS granted the Foundation 501(c)(3) tax-exempt status, retroactive to January 1, 2025. In other words, SVAC created the Foundation to mitigate the ongoing harm caused by VAEF's conduct and incurred unnecessary expense in doing so.

**J. Pre-Suit Demand**

65. On December 10, 2025, SVAC, through counsel, sent VAEF a written demand letter requiring VAEF to, among other things: (1) cease all redirection of SVAC's domain names; (2) transfer administrative control of the domains to SVAC; (3) return all website content, email credentials, and corporate records; (4) return SVAC's Constant Contact marketing list; and (5) restore all Gallery 21 funds and records and refund the $500 sublicense payment. The demand letter also required VAEF to implement a litigation hold and preserve all potentially relevant documents and data. VAEF failed to comply with these demands or to provide any response.

66. On February 11, 2026, SVAC, through counsel, sent VAEF a second demand letter requesting written confirmation of compliance or a concrete compliance plan with dates certain no later than February 20, 2026. VAEF again failed to comply or respond. As of the date of this Complaint, VAEF has not taken any action to return SVAC's property or otherwise comply with SVAC's demands.

**COUNT I — VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) (Against VAEF)**

67. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68. The name "Spanish Village Art Center" is distinctive and has been used by SVAC since at least 1981 to identify its organization, services, and activities. SVAC registered and has used the domain names SpanishVillageArtCenter.com, SpanishVillageArt.com, and VillageArtandEducation.org in connection with its

nonprofit services, member communications, and public outreach. These domain names are identical or confusingly similar to SVAC's protected marks.

69. VAEF registered, trafficked in, or used the domain names SpanishVillageArtCenter.com, SpanishVillageArt.com, and VillageArtandEducation.org with a bad faith intent to profit within the meaning of 15 U.S.C. § 1125(d)(1)(A). VAEF's bad faith is evidenced by, among other things: (a) VAEF has no intellectual property rights in the domain names, which were purchased and maintained by SVAC; (b) VAEF redirected all web traffic from SVAC's domains to VAEF's own website to divert SVAC's members, visitors, and prospective supporters; (c) VAEF updated the WHOIS registration for SpanishVillageArtCenter.com and made the registrant information private through a privacy service, thereby concealing the identity of the registrant and obstructing SVAC's efforts to recover its domain names; (d) VAEF refused to transfer the domain names to SVAC despite repeated demands, including formal demand letters sent on December 10, 2025 and February 11, 2026; (e) VAEF's actions were intended to disrupt SVAC's operations and appropriate SVAC's goodwill and online presence for VAEF's own benefit; and (f) VAEF used the domain names to create a false impression that VAEF was the successor to or the same entity as SVAC, thereby deceiving the public.

70. As a direct and proximate result of VAEF's violations of 15 U.S.C. § 1125(d), SVAC has suffered and continues to suffer irreparable harm and monetary damages, including loss of web traffic, loss of member and public communications, loss of revenue, and damage to its reputation and goodwill. SVAC is entitled to statutory damages, actual damages, injunctive relief, and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1117 and 1125(d).

**COUNT II — VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 ET SEQ.) (Against VAEF, Scheuermann, Casciani, Binford, King, and Papousek)**

71. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

72. SVAC developed and maintained confidential and proprietary business information that constitutes "trade secrets" within the meaning of 18 U.S.C. § 1839(3), including but not limited to: (a) SVAC's Constant Contact marketing database containing approximately 2,000 contacts, including names, email addresses, segmentation data, and engagement history; (b) SVAC's membership records, jury applications, and waiting list data; (c) SVAC's corporate financial records, operational procedures, vendor contracts, board minutes, and internal communications stored on SVAC's website; and (d) SVAC's Gallery 21 exhibitor schedules, contracts, and financial data (collectively, the "SVAC Trade Secrets"). The SVAC Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information related to SVAC's services. SVAC took reasonable measures to maintain the secrecy of the SVAC Trade Secrets, including restricting access to authorized officers and personnel, maintaining password-protected accounts, and requiring dual signatures on financial transactions.

73. VAEF, Scheuermann, Casciani, Binford, King, and Papousek (individually and as agents of VAEF) misappropriated the SVAC Trade Secrets within the meaning of 18 U.S.C. § 1839(5). Specifically: (a) Papousek, without authorization, extracted approximately 700 contacts from SVAC's Constant Contact marketing database and delivered those contacts to VAEF, after resigning as SVAC's Corresponding Secretary and withholding the Constant Contact password from SVAC's authorized officers; (b) Scheuermann and Casciani exploited their

positions as officers of SVAC and their privileged administrative access to SVAC's intellectual property and confidential information to acquire and retain the SVAC Trade Secrets as they transitioned into officers of VAEF, and refused to release administrative credentials and access to SVAC's newly elected officers; (c) Binford similarly exploited her dual roles as officer of both SVAC and VAEF to acquire and retain SVAC's confidential membership records, corporate documents, financial records, and operational data for the benefit of VAEF; and (d) VAEF and the individual Defendants used the SVAC Trade Secrets to conduct VAEF's own operations, including membership management, Gallery 21 programming, and marketing outreach, in direct competition with SVAC. Each Defendant knew or had reason to know that the SVAC Trade Secrets were acquired through improper means and without SVAC's consent. The SVAC Trade Secrets were used in, and the products or services resulting from the use of the SVAC Trade Secrets were used in, or intended for use in, interstate or foreign commerce.

74. As a direct and proximate result of Defendants' misappropriation of the SVAC Trade Secrets, SVAC has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to the actual loss caused by the misappropriation and any unjust enrichment not captured by actual loss. Defendants' misappropriation was willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C). SVAC is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A), damages pursuant to 18 U.S.C. § 1836(b)(3)(B), exemplary damages in an amount not exceeding two (2) times the amount of damages awarded pursuant to 18 U.S.C. § 1836(b)(3)(C), and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

**COUNT III — CONVERSION (Against All Defendants)**

75. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76. SVAC owned and had the right to possess the following property: (a) the domain names SpanishVillageArtCenter.com and SpanishVillageArt.com and all associated website content, databases, and media; (b) domain-based email accounts, including officer role accounts; (c) corporate documents and records stored on SVAC's website; (d) approximately 700 contacts in SVAC's Constant Contact marketing database; and (e) funds held in SVAC's Gallery 21 bank account.

77. VAEF, together with Scheuermann, Casciani, Binford, King, and Papousek, wrongfully and intentionally exercised dominion and control over SVAC's property by seizing SVAC's domain names and website, redirecting SVAC's web traffic, withholding SVAC's email credentials and corporate records, extracting and retaining SVAC's Constant Contact marketing list, and withdrawing more than $3,000 from SVAC's Gallery 21 bank account—all without SVAC's knowledge, consent, or authorization. Each individual Defendant personally participated in, directed, or knowingly facilitated one or more of the foregoing acts of conversion.

78. As a direct and proximate result of Defendants' conversion, SVAC has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to the value of the converted property, lost revenue, consequential damages, and interest.

**COUNT IV — UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE § 17200 ET SEQ.) (Against All Defendants)**

79. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

80. California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Defendants' conduct as alleged herein—including the seizure of SVAC's domain names and website, the unauthorized redirection of web traffic, the misappropriation of SVAC's marketing contacts, the conversion of Gallery 21 funds, and the withholding of SVAC's

corporate records—constitutes unlawful, unfair, and fraudulent business practices within the meaning of § 17200.

81. Defendants' conduct is "unlawful" because it violates, among other laws, the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)) and constitutes conversion and fraud under California common law. Defendants' conduct is "unfair" because it offends established public policy, is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to SVAC that is not outweighed by any countervailing benefits to consumers or competition. Defendants' conduct is "fraudulent" because it is likely to deceive the public into believing that VAEF is the rightful operator of SVAC's website and the successor to SVAC's mission and membership.

82. As a direct and proximate result of Defendants' unfair business practices, SVAC has suffered and continues to suffer injury in fact and has lost money and property. SVAC is entitled to restitution of all funds and property wrongfully obtained by Defendants, disgorgement of profits, and injunctive relief pursuant to California Business and Professions Code §§ 17203 and 17204.

**COUNT V — FRAUD (Against VAEF, Scheuermann, Casciani, Binford, and King)**

83. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

84. In 2023 and 2024, VAEF, Scheuermann, Casciani, Binford, and King made material representations of fact to SVAC's Board and membership, including but not limited to: (a) that the SUP would be presented to SVAC's Board before execution; (b) that SVAC would continue to be in charge of members and member activities, including membership drives, new member juries, governance of members, disputes between members, and annual events; (c) that nothing would change about SVAC's status, governance, or operations following the execution of the SUP; (d) that SVAC's digital assets, including its website and domain names,

would be returned to SVAC; and (e) that SVAC's websites and domain names would be returned to SVAC by Christmas 2024, as Scheuermann represented to a representative of the City's Parks and Recreation Department on or about October 23, 2024.

85. These representations were false when made. VAEF, Scheuermann, Casciani, Binford, and King knew the representations were false, or made them recklessly and without regard for their truth at the time they were made. The representations were made with the intent to induce SVAC and its members to refrain from taking protective action and to acquiesce in VAEF's assumption of control over the SUP and the premises. SVAC and its members reasonably relied on these representations to their detriment by, among other things, refraining from seeking alternative arrangements, continuing to fund and maintain SVAC's digital infrastructure, and permitting VAEF's officers to retain administrative access to SVAC's corporate assets.

86. As a direct and proximate result of the fraud of VAEF, Scheuermann, Casciani, Binford, and King, SVAC has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to the loss of its domain names, website, email infrastructure, corporate records, marketing database, Gallery 21 revenue, and the sublicense payment, as well as lost income, reputational harm, and consequential damages.

**COUNT VI — BREACH OF FIDUCIARY DUTY (Against Scheuermann, Casciani, Binford, and VAEF)**

87. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88. Scheuermann, Casciani, and Binford, each served as officers and/or directors of SVAC during the period relevant to this action. King served as VAEF's representative to the SVAC board during the period relevant to this action. By virtue of their positions, each owed fiduciary duties to SVAC, including the duties of

loyalty, care, and good faith. These duties required them to act in the best interests of SVAC, to refrain from self-dealing, and to refrain from using their positions or SVAC's confidential information and assets for the benefit of themselves or any third party, including VAEF.

89. Scheuermann, Casciani, and Binford, breached their fiduciary duties to SVAC by, among other things: (a) exploiting their administrative access to SVAC's systems and assets—obtained by virtue of their positions as SVAC officers—to seize and transfer control of SVAC's domain names, website, email accounts, and corporate records to VAEF; (b) negotiating and executing the SUP on terms adverse to SVAC's interests while simultaneously serving as officers of both SVAC and VAEF, and excluding SVAC's duly elected President from the negotiations; (c) directing the misappropriation of SVAC's Constant Contact marketing list for VAEF's benefit; (d) orchestrating the unauthorized takeover of Gallery 21 and the withdrawal of more than $3,000 from SVAC's Gallery 21 bank account for VAEF's benefit; and (e) making false assurances to SVAC's Board and membership to prevent SVAC from taking protective action while they systematically diverted SVAC's assets to VAEF. VAEF knowingly induced, aided, abetted, and benefited from these breaches of fiduciary duty, and is therefore jointly and severally liable for the resulting damages.

90. As a direct and proximate result of these breaches, SVAC has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to the value of the misappropriated assets, lost revenue, consequential damages, and interest.

**COUNT VII — MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE §§ 3426–3426.11) (Against VAEF, Scheuermann, Casciani, Binford, King, and Papousek)**

91. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

92. SVAC developed and maintained confidential and proprietary business information that derives independent economic value from not being generally known to the public or to other organizations, including but not limited to: (a) SVAC's Constant Contact marketing database containing over 2,000 contacts, including names, email addresses, segmentation data, and engagement history; (b) SVAC's membership records, jury applications, and waiting list data; (c) SVAC's corporate financial records, operational procedures, vendor contracts, and internal communications stored on SVAC's website; and (d) SVAC's Gallery 21 exhibitor schedules, contracts, and financial data (collectively, "Trade Secrets"). SVAC took reasonable measures to maintain the secrecy of its Trade Secrets, including restricting access to authorized officers and personnel, maintaining password-protected accounts, and requiring dual signatures on financial transactions.

93. VAEF, Scheuermann, Casciani, Binford, King, and Papousek acquired, disclosed, and used SVAC's Trade Secrets through improper means within the meaning of California Civil Code section 3426.1. Specifically: (a) Papousek, without authorization, extracted approximately 700 contacts from SVAC's Constant Contact marketing database and delivered those contacts to VAEF; (b) Scheuermann, Casciani, Binford, and King exploited their prior administrative access as SVAC officers to SVAC's password-protected systems to acquire and retain SVAC's confidential membership records, corporate documents, and operational data for the benefit of VAEF; and (c) VAEF and the individual Defendants used SVAC's Trade Secrets to conduct VAEF's own operations, including artists management, Gallery 21 programming, and marketing outreach, in direct competition with SVAC. Each Defendant knew or had reason to know that the acquisition and use of SVAC's Trade Secrets was accomplished through improper means and without SVAC's consent.

94. As a direct and proximate result of Defendants' misappropriation of SVAC's Trade Secrets, SVAC has suffered and continues to suffer damages in an

amount to be proven at trial, including but not limited to the actual loss caused by the misappropriation and any unjust enrichment not captured by actual loss. Defendants' misappropriation was willful and malicious within the meaning of California Civil Code section 3426.3. SVAC is entitled to injunctive relief, damages, exemplary damages in an amount not exceeding twice the award of damages, and reasonable attorneys' fees and costs pursuant to California Civil Code sections 3426.2, 3426.3, and 3426.4.

**COUNT VIII — UNJUST ENRICHMENT (Against VAEF)**

95. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

96. SVAC conferred substantial benefits upon VAEF, including but not limited to: (a) the domain names SpanishVillageArtCenter.com and SpanishVillageArt.com and all associated website content, which SVAC purchased, built, and maintained with its own funds; (b) SVAC's domain-based email infrastructure and corporate records; (c) SVAC's Constant Contact marketing database of approximately 700 contacts; (d) more than $3,000 in funds withdrawn from SVAC's Gallery 21 bank account; (e) the $500 sublicense payment made by SVAC to the City of San Diego on September 27, 2024, which has never been refunded; and (f) the goodwill, web traffic, and online presence associated with SVAC's domain names and digital identity. VAEF has knowledge of and has knowingly accepted and retained these benefits. It would be unjust and inequitable for VAEF to retain these benefits without compensating SVAC. SVAC is entitled to restitution of all benefits conferred upon VAEF, together with interest thereon.

**COUNT IX — TRESPASS TO CHATTELS (Against All Defendants)**

97. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

98. SVAC owned and possessed, or had the right to possess, the following personal property: (a) the domain names SpanishVillageArtCenter.com and

SpanishVillageArt.com and all associated website content, databases, and media; (b) domain-based email accounts and credentials; (c) corporate documents and records stored on SVAC's website; (d) approximately 700 contacts in SVAC's Constant Contact marketing database; and (e) funds held in SVAC's Gallery 21 bank account.

99. VAEF, together with Scheuermann, Casciani, Binford, King, and Papousek, intentionally intermeddled with and interfered with SVAC's possessory interest in the foregoing property by, among other things: (a) seizing and retaining control of SVAC's domain names and website and denying SVAC access thereto; (b) redirecting web traffic from SVAC's domain names to VAEF's own website; (c) withholding SVAC's email credentials and corporate records from SVAC's authorized officers; (d) extracting and retaining SVAC's Constant Contact marketing list without authorization; and (e) making unauthorized withdrawals from SVAC's Gallery 21 bank account. Each Defendant's interference with SVAC's property was unauthorized, without SVAC's consent, and without legal justification.

100. As a direct and proximate result of Defendants' trespass to chattels, SVAC has been deprived of the use and benefit of its property and has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to the diminished value and impaired condition of its property, lost revenue, loss of member and public communications, and consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against all Defendants, jointly and severally, as follows:

a) A preliminary and permanent injunction ordering Defendants to: (i) cease all redirection of SpanishVillageArtCenter.com, SpanishVillageArt.com, and VillageArtandEducation.org to VAEF-controlled or Defendant-controlled resources; (ii) transfer administrative control of those domain names to SVAC; (iii) return all website content, email credentials, corporate records, and documents to SVAC; (iv) cease all use of SVAC's Constant Contact marketing list and return all copies

thereof to SVAC; (v) cease all use, disclosure, and retention of SVAC's Trade Secrets and SVAC Trade Secrets and return all copies thereof to SVAC; (vi) restore all Gallery 21 funds, records, and property to SVAC; (vii) cease all interference with SVAC's operations, governance, and member relations; and (viii) destroy all materials, in whatever form, containing or derived from SVAC's Trade Secrets and SVAC Trade Secrets that cannot be returned to SVAC;

b) Punitive damages in an amount sufficient to punish Defendants and deter similar conduct, based on Defendants' fraudulent and malicious conduct as alleged herein, and exemplary damages not to exceed two (2) times the amount of damages awarded pursuant to 18 U.S.C. § 1836(b)(3)(C) and California Civil Code § 3426.3 for Defendants' willful and malicious misappropriation of SVAC's trade secrets;

c) Compensatory damages in an amount to be proven at trial, including but not limited to the value of all converted and misappropriated property, lost revenue, lost income, reputational harm, diminished value and impaired condition of SVAC's property, loss of member and public communications, and all consequential damages;

d) Statutory damages pursuant to 15 U.S.C. § 1125(d)(1)(C) for VAEF's violations of the Anticybersquatting Consumer Protection Act;

e) Restitution and disgorgement of all funds, property, and profits wrongfully obtained by Defendants, including but not limited to more than $3,000 withdrawn from SVAC's Gallery 21 bank account, the Gallery 21's $500 sublicense payment, and all benefits conferred upon VAEF as set forth herein;

f) Attorneys' fees and costs pursuant to 15 U.S.C. § 1117, 18 U.S.C. § 1836(b)(3)(D), California Civil Code § 3426.4, and any other applicable statute or rule;

g) Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

h) Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

Dated: August 7, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ MARTIN R. BADER_*
MARTIN R. BADER

Attorneys for Spanish Village Art Center, Inc.